UNITED STATES of America,
Plaintiff–Appellee,

v.

Shawn WOODALL, Defendant–
Appellant.

No. 00–50754.

D.C. No. CR–00–01768–H.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Decided Dec. 3, 2001.

Before GOODWIN, WALLACE, and
THOMAS, Circuit Judges.

MEMORANDUM *

Shawn Woodall appeals his conviction
for bringing illegal aliens into the United
States for financial gain and without pre-
sentation in violation of 8 U.S.C.
§§ 1324(a)(2)(B)(ii) & (iii). We have juris-
diction pursuant to 28 U.S.C. § 1291 and
we affirm. Because the parties are famil-
iar with the factual and procedural history
of the case, we will not recount it here.

---

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts of this circuit except as provided by 9th Cir.
R. 36–3.

■ Woodall first argues that the district court erroneously admitted the opinion testimony of Immigration Inspector Janet Gale. At trial, the prosecution asked Inspector Gale to describe Woodall's tone of voice during a post-arrest phone conversation between Woodall and his wife. Inspector Gale responded: "[n]ot panic stricken. That's when I totally discounted his story." The admission into evidence of Inspector Gale's response stating that she "totally discounted [Woodall's] story" was error because "opinion evidence regarding a witness' credibility is inadmissible." *United States v. Sanchez–Lima*, 161 F.3d 545, 548 (9th Cir.1998); *see also United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.1979) ("Under the Federal Rules, opinion testimony on credibility is limited to character; all other opinions on credibility are for the jurors themselves to form.").

■ However, we reverse for nonconstitutional errors in admitting evidence "only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict." *United States v. Arambula–Ruiz*, 987 F.2d 599, 605 (9th Cir.1993) (internal quotations omitted). Here, it does not appear that the erroneous admission of Inspector Gale's testimony materially affected the verdict. First, Inspector Gale's disbelief of Woodall's story was mentioned only in Inspector Gale's testimony; the government made no reference to Inspector Gale's statement in its closing argument. *See Arambula–Ruiz*, 987 F.2d at 605. Second, notwithstanding Inspector Gale's statement, the government introduced ample corroborating evidence to support a jury finding that Woodall was not under duress. *See United States v. Barrett*, 703 F.2d 1076, 1082 (9th Cir.1983). Trial testimony indicated that Woodall attempted to bring illegal aliens into the United States on May 17 and May 19, 2000. Between these two dates, Woodall stayed at a hotel in Tijuana located near the apartment of Jimmy, a man who sold drugs. Testimony did not indicate that Woodall made any attempts to get away from Jimmy or Tijuana between his two smuggling attempts. Woodall testified that he did not feel that he was free to leave because he owed Jimmy money and because he was not sure whether Jimmy owned the taxis in the area. Woodall admitted that when he was apprehended for alien smuggling the first time (on May 17) he did not tell law enforcement officials that he was under duress. Mary Woodall testified that on the occasions that her husband transported aliens to the United States she stayed at Jimmy's house with Jimmy's wife. She was told that it was "in her best interests to stay there." Jimmy was generally not present at the house. After she received her husband's phone call in the early morning hours of May 20, she asked Jimmy for some money for cigarettes. She then took a cab to the trolley, and took the trolley to San Diego. No one attempted to stop or restrain her. In light of this evidence, we cannot conclude that the district court's erroneous admission of Inspector Gale's opinion testimony materially affected the verdict. Accordingly, we conclude that the admission of Inspector Gale's statement was harmless error.

■ Woodall next contends that the combination of the government's hearsay objections, the court's limiting instructions, and the exclusion of certain defense testimony collectively denied him the opportunity to present his duress defense. At trial, Woodall gave a detailed statement about Jimmy's threats. He testified that Jimmy stated that he would kill his wife if Woodall did not transport aliens across the border. Woodall also set forth the details of his drug debt to Jimmy. Further, Mary Woodall testified regarding the details of her alleged confinement at Jimmy's apartment. In light of this testimony, it is

evident that Woodall was able to present his duress defense to the jury.

AFFIRMED.