**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose ARAMBULA–RUIZ, Defendant–
Appellant.**

No. 91–50504.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1992.

Decided March 3, 1993.

Robert E. Boyce and Tamara L. Cross, San Diego, CA, for defendant-appellant.

Gonzalo P. Curiel, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before J. CLIFFORD WALLACE, Chief Judge, and STEPHEN S. TROTT and THOMAS G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## I.

## OVERVIEW

A jury convicted appellant Jose Arambula–Ruiz (Arambula) for conspiracy to possess a controlled substance with intent to distribute, possession of a controlled substance with intent to distribute, and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) (1984), 21 U.S.C. § 846 (1984) and 18 U.S.C. § 2 (1979). He was sentenced to a ninety-month jail term followed by four years of supervised release. He appeals claiming that both evidentiary and constitutional errors occurred at trial. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291 and now affirm.

## II.

## BACKGROUND

Drug Enforcement Agent Jorge Rodriguez went undercover to investigate Otto Rene Aldana. Aldana negotiated a sale of fifteen ounces of heroin with Rodriguez and, after meeting to test a sample, they arranged for delivery of the drug on June 27, 1990, at a Denny's Restaurant.

On June 27, while Agent John Roberts was conducting surveillance at Aldana's apartment, he observed Arambula and Mariles–Ortega standing outside conducting "counter-surveillance." He then saw Aldana, Arambula, Mariles, Medina–Flores and

Guerra–Remboa congregate on the front porch, after which both Arambula and Mariles went to a Chevrolet Impala and retrieved a white package from the trunk. Afterwards, they all returned to the house and came out approximately five minutes later with Aldana carrying a brown paper sack.

They got into three separate cars and drove to Denny's where Agent Rodriguez was waiting. Arambula and Mariles drove to the restaurant in the Chevrolet Impala and upon their arrival went inside Denny's. Medina and Guerra walked to the side of the restaurant, and Aldana remained in his car. Agent Rodriguez approached Aldana's vehicle. Aldana then handed the brown paper sack to Rodriguez which contained heroin. All five men were immediately arrested.

A federal grand jury returned a two-count indictment against all five men (Arambula, Aldana, Medina, Mariles and Guerra), charging them with conspiracy to possess a controlled substance with intent to distribute, possession of a controlled substance with intent to distribute, and aiding and abetting. Arambula pled not guilty and was tried jointly with Medina and Guerra; Aldana's trial was severed; and Mariles pled guilty.

The jury found Arambula guilty on both the conspiracy and possession counts; however, the jury found codefendants Medina and Guerra not guilty on the possession charges. Because the jury was unable to agree on the conspiracy charges against Medina and Guerra, the court granted their motions for acquittal.

Arambula now appeals claiming that the district court erred in three ways: (1) admitting evidence of prior bad conduct for the limited purpose of showing knowledge and intent; (2) admitting co-conspirator statements in violation of Fed.R.Evid. 801(d)(2)(E); and (3) failing to grant his motion for mistrial after an alleged *Bruton* error. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

### III.

### DISCUSSION

#### A. *Prior Bad Conduct*

Arambula contends the district court erred in admitting evidence of his prior drug conviction for possession of a controlled substance with intent to distribute.

■ We review for abuse of discretion the district court's decision to admit evidence of prior bad conduct under Fed. R.Evid. 404(b). *United States v. Rubio–Villareal,* 927 F.2d 1495, 1502 (9th Cir. 1991), *vacated in part and remanded on other grounds,* 967 F.2d 294 (9th Cir.1992) (en banc). However, the issue of whether the evidence falls within the scope of Rule 404(b) is reviewed *de novo. Id.* at 1503.

Fed.R.Evid. 404(b) provides that evidence of prior crimes, acts or wrongs is not admissible to prove the character of an accused in order to show action in conformity with that character. However, Rule 404(b) also sets forth an exception which allows the admission of prior conduct for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ In determining whether evidence of Arambula's prior conviction was properly admitted under Rule 404(b), the evidence must satisfy the following four requirements: (1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases, the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time. *United States v. Houser,* 929 F.2d 1369, 1373 (9th Cir.1990). Finally, in addition to these requirements, we must analyze the evidence pursuant to Rule 403 and determine whether its probative value outweighs its prejudicial effect. *Id.* The Government has the burden of proving that the evidence meets all of the above requirements. *United States v. Alfonso,* 759 F.2d 728, 739 (9th Cir.1985). Furthermore, the Government is required to establish how the evidence is relevant to one or more

issues in the case: "it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir. 1982).

### (1) Material Element

■ In the present case, Arambula's prior conviction for possession of heroin with intent to distribute is relevant to a material element of the charged offense because it tends to show knowledge. Knowledge is a material element of the crime of possessing heroin with intent to distribute. 21 U.S.C. § 841. It is also a material element of the crime of conspiring to possess heroin with intent to distribute. *United States v. Schmidt,* 947 F.2d 362, 367 (9th Cir.1991) ("knowledge of the objective of the conspiracy is an essential element of any conspiracy conviction" (internal quotation and citation omitted)).

Arambula's defense at trial was that he was an innocent bystander "at the wrong place at the wrong time." Because he argued that he was unaware of the purpose of the conspiracy to distribute heroin, his prior conviction was relevant to establish a crucial element of the crime charged. It was not admitted, therefore, merely to show criminal disposition. *See United States v. Lewis,* 837 F.2d 415, 418–19 (9th Cir.) (approving use of evidence that six weeks prior to child's death, defendant had severely beaten him where such evidence was not used for sole purpose of showing criminal disposition), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

### (2) Similarity

■ Arambula argues that the only similarity between the prior drug conviction and the one under which he was charged is that they both involved narcotics. However, as indicated in our prior opinions, similarity is not always a prerequisite to admissibility under Rule 404(b). *See United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1326 (9th Cir.1992). As we reasoned in *Ramirez–Jiminez:*

The degree of similarity required ... will depend on the evidential hypothesis which is being employed. Thus, for example, we have held that similarity is always required to prove identity of intent.... When offered to prove knowledge, however, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence.

*Id.* (internal quotation and citations omitted); *see also United States v. Miller,* 874 F.2d 1255, 1269 (9th Cir.1989).

In this case, the district court admitted the evidence of Arambula's prior drug conviction for the purpose of showing both intent and knowledge. Although a factual similarity between Arambula's prior drug conviction and the one charged is required in the former, evidence of prior bad acts is admissible to show the latter even when similarity is lacking, as long as it makes "the existence of [Arambula's] knowledge more probable than it would be without the evidence." *Ramirez–Jiminez,* 967 F.2d at 1326. The fact that Arambula had been convicted of possessing heroin with the intent to distribute certainly made the existence of his knowledge regarding the current heroin sale more probable than not. It helped disprove Arambula's contention that he was merely an innocent bystander, and tended to show that he was aware of the heroin transaction. *See id.* The district court, therefore, did not abuse its discretion in admitting that evidence.

### (3) Sufficient Proof

■ In this case, the fact that Arambula was convicted of the prior drug offense is sufficient proof that the defendant committed the prior act.

### (4) Remoteness

■ Arambula's prior arrest for possession of controlled substances with intent to sell occurred on March 23, 1989. He was convicted on May 2, 1989. The district court did not err in ruling that evidence of the prior conviction was not too remote in

time. We have held that a conviction which occurred five years prior to the charge at issue was not too remote. *Houser*, 929 F.2d at 1373.

(5) Probative Value/Prejudicial Effect

 Finally, we must review for abuse of discretion the district court's decision that the probative value of the evidence concerning Arambula's prior conviction outweighed its prejudicial value. *Id.* Both Fed.R.Evid. 403 and Rule 404(b) require the district court to engage in balancing probative value with prejudicial effect: "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Fed. R.Evid. 404(b) advisory committee's note.

In *Houser*, we noted the prior drug conviction was probative to show intent; but, we also recognized that "[i]t is always possible that the similarity between the prior acts and the current offense would improperly affect the jury's deliberations." *Houser*, 929 F.2d at 1373. Nonetheless, we held the district court did not abuse its discretion in admitting the prior conviction because the judge had carefully instructed the jury and had balanced the probative value of the evidence against its prejudicial effect. *Id.*

The district court in this case engaged in the requisite balancing and determined the probative value of the prior conviction evidence outweighed its prejudicial effect. After reviewing the record, we do not find the district court abused its discretion in ruling that the probative value outweighed any prejudice to Arambula. Furthermore, the judge gave an appropriate instruction limiting the purpose for which the jury could consider evidence of the defendant's prior conviction. *See Rubio–Villareal*, 927 F.2d at 1503 (holding probative value of prior drug conviction outweighed any prejudice because high need for evidence coupled with judge's careful limiting instruction weighed in favor of admission). Therefore, because all the prerequisites for

admitting evidence of prior bad conduct were satisfied, we affirm the admission of Arambula's prior drug conviction.

 In addition to the prior drug conviction, Arambula argues that the district court erred in admitting evidence of two prior arrests under Rule 404(b), one for being an undocumented alien and one for illegal possession of a firearm. However, the Government claims Arambula has waived any objection on appeal because he did not object at trial to the admission of his prior arrests. We reject the Government's contention.

Although Arambula's objection lacked specificity, it was sufficient to preserve the issues on appeal. Arambula objected during the motion in limine to evidence of the prior drug arrest, including all charges that were the product of that arrest. At trial, Arambula made a timely objection after the Government questioned the arresting officer as to what charges were brought against Arambula as a result of the prior drug offense. After the objection was overruled, the officer stated that he had also arrested Arambula for being an undocumented alien and for illegal possession of a firearm.

Arambula's objection encompassed all "charges" that the arresting officer would subsequently include in his answer to the Government's question. The district court judge stated that he had read the record of the prior charges and ruled that the probative value of the evidence outweighed any prejudice. The record included reference to the prior firearm and undocumented alien charges. Thus, the judge was ruling on those charges as well. Because Arambula objected to the question regarding all prior "charges," he did not waive his right to appeal the admission of those two prior arrests.

 We next consider whether admitting evidence of the prior arrests constituted error. Those prior arrests did not establish a material element of the crimes charged. Thus, they lacked probative value because they were not relevant to the charges at issue in Arambula's trial, i.e.,

conspiracy and possession of heroin with intent to distribute. Illegal possession of a firearm and undocumented alien charges do not tend to prove a material issue of the drug conspiracy and possession charges. Therefore, evidence of the prior arrests should have been excluded under Rule 404(b) because it was not admissible for purposes other than to show Arambula's character or propensity to commit bad acts.

However, notwithstanding the district court's error in allowing into evidence reference to those charges, we must determine whether the error requires reversal or is harmless. This court reverses for nonconstitutional errors in admitting evidence " 'only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict.' " *United States v. Bettencourt,* 614 F.2d 214, 218 (9th Cir.1980) (quoting *United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.), *cert. denied,* 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979)).

We conclude the error was harmless because it is not probable that the evidence *materially* affected the jurors' verdict. First, the judge instructed the jury of the limited purpose for which they were to use that type of evidence. Second, the testimony elicited from the officer as to the firearm and undocumented alien arrests arose within the context of his testimony regarding Arambula's prior drug arrest which was the main purpose of his testimony. Finally, those two arrests were mentioned only in the officer's testimony; the Government made no reference to them in closing arguments. Therefore, given the limited reference to those prior arrests, we find the admission of this evidence was harmless error.

## B. *Bruton Error*

Arambula next argues that the district court committed a *Bruton* error when it denied his motion for mistrial after coun-

sel for a codefendant asked a leading question referring to an inadmissible co-conspirator hearsay statement which incriminated Arambula. He contends that the alleged error violated his Sixth Amendment right to confrontation. We disagree.

Denials of motions for mistrial are reviewed for abuse of discretion. *United States v. Homick,* 964 F.2d 899, 906 (9th Cir.1992). However, we review *de novo* alleged constitutional errors. *United States v. Yarbrough,* 852 F.2d 1522, 1536 (9th Cir), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). Nonetheless, Confrontation Clause violations do not require reversal if the error was harmless beyond a reasonable doubt. *Toolate v. Borg,* 828 F.2d 571, 575 (9th Cir.1987).

The Supreme Court held that where one defendant's confession inculpates another defendant, the former's confession cannot be admitted into evidence because there is a "substantial risk that the jury, despite instructions to the contrary, [will look] to the incriminating extrajudicial statements in determining petitioner's guilt...." *Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622. However, as we have noted, only statements that are powerfully incriminating, or clearly inculpate the defendant, implicate the *Bruton* rule. *Yarbrough,* 852 F.2d at 1537. Redaction and proper limiting instructions together are sufficient to overcome *Bruton* error. *Id.*

Codefendant Guerra's counsel asked the arresting officer the following question: "You state, in your report, that Aldana told you that the sample was a representative of 40 ounces of heroin that Jose Arambula–Ruiz had in his possession." Both parties agree that the statement was inadmissible.[1] However, they dispute its prejudicial effect.

We have found no cases which address the precise issue presented here: whether an incriminating *question* posed by defense counsel and based upon a code-

---

1. Guerra's counsel inadvertently asked the question. He misconstrued the point in time at which the alleged statement was made. The report reads as though Aldana's statement had been made in the course of the conspiracy, and therefore was arguably admissible under the co-conspirator hearsay exception, Rule 801(d)(2)(E). In fact, Aldana made that statement after his arrest and as part of his confession; thus, it was inadmissible.

fendant's confession creates reversible *Bruton* error. An improper incriminating question or series of questions may constitute reversible error in certain cases. *See Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965). In *Douglas,* the prosecutor called the defendant's co-conspirator to the stand, read his alleged confession to him, and repeatedly asked him to deny or confirm each statement. Although the co-conspirator refused to answer, the Court held that the questioning was reversible error because it placed incriminating evidence before the jury in a way that "may well have been equivalent in the jury's mind of testimony." *Id.*

The question posed in the present case by counsel for Arambula's co-conspirator was different from those posed in *Douglas* and does not require reversal. Indeed, the facts of this case more closely resemble those in *United States v. Carlson,* 423 F.2d 431 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). In *Carlson,* codefendants in a conspiracy argued a *Bruton* error had occurred when one codefendant questioned a psychiatrist regarding that codefendant's mental capacity. *Id.* at 434. During the course of questioning, the codefendant posed a hypothetical question which included facts relating to the operation of a conspiracy involving four unnamed individuals. *Id.* at 436. We recognized that although the names of the other four defendants had not been mentioned in the question, the content of the question was such that the jury would naturally conclude the unnamed individuals were the four defendants. *Id.* The trial court had granted the four defendants' motion to strike the hypothetical question as well as all of the psychiatrist's testimony. *Id.* at 434.

On appeal, the four defendants argued that the hypothetical question violated *Bruton* and their Sixth Amendment right to confront witnesses against them. We disagreed, however, and concluded that there were several reasons why *Bruton* did not require reversal. One of those reasons is pertinent to this appeal. We observed that the facts of *Carlson* were more similar to *Frazier v. Cupp,* 394 U.S. 731, 89

S.Ct. 1420, 22 L.Ed.2d 684 (1969), than to *Bruton.* In *Frazier,* the Supreme Court held that *Bruton* error did not occur where the prosecutor in his opening statement summarized inculpatory testimony he expected the defendant's accomplice to give, and the accomplice later refused to testify. The Court reasoned that "unlike the situation in ... *Bruton,* [the] statement was not a vitally important part of the prosecutor's case." *Frazier,* 394 U.S. at 735, 89 S.Ct. at 1423. Based upon that reasoning, we concluded that reversal was not required in *Carlson* in part because the hypothetical question "was not part of the prosecution's case at all." *Carlson,* 423 F.2d at 438.

The same reasoning applies, with even more force, to the facts of this case. The question posed by counsel for Arambula's codefendant was never part of the prosecution's case, and, significantly, the question was never evidence. The trial court struck the question from the record before the witness had an opportunity to respond to it. In *Carlson,* by contrast, the witness answered the hypothetical question and his testimony was later stricken from the record. *See id.*

The Court in *Bruton* explicitly sought a solution to the difficulty juries have in disregarding certain improperly admitted evidence that seriously inculpates a defendant. *See Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622. Because of that difficulty, the Court concluded that even a limiting instruction cannot eradicate the damage caused by the admission of a codefendant's inculpating confession. Here, however, no answer was given and thus no such evidence was ever admitted. Therefore, we conclude that no *Bruton* error occurred in this case where an unanswered question was posed by codefendant's counsel because that question was neither part of the prosecution's case nor did it constitute evidence.

The question, moreover, was followed immediately by a limiting instruction which advised the jury to disregard the question and not speculate as to what the answer might have been. Although *Bruton* made clear that in certain circumstances a limit-

ing instruction cannot cure the harm caused by the admission of improper evidence, we believe that under the circumstances of this case, the limiting instruction was sufficient to safeguard any possible infringement of Arambula's constitutional rights. *See Frazier*, 394 U.S. at 735, 89 S.Ct. at 1422. As the Court observed in *Frazier*, although it may be "unreasonable to assume that a jury can disregard a co-conspirator's statement when introduced against one of two joint defendants, it does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial." *Id.* at 736, 89 S.Ct. at 1423. Therefore, the district court's limiting instruction was sufficient to protect Arambula from any prejudice that may have resulted from the posed question.

## C. *Co-conspirator Statements*

Arambula next contends the district court's admission of hearsay co-conspirator statements violated his Sixth Amendment right to confrontation. The undercover officer testified that Aldana had told him Aldana would get the drugs from a source, the owners of the drugs would follow him to the delivery site, and would be present when the sale took place. He argues that the admission of that testimony constituted prejudicial error.

█ We review for abuse of discretion the district court's decision to admit co-conspirator statements and for clear error the underlying factual determination that a conspiracy existed and that the statements were made in furtherance of that conspiracy. *United States v. Peralta*, 941 F.2d 1003, 1006 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1484, 117 L.Ed.2d 626 (1992).

█ Initially, the Government argues that Arambula waived his right to challenge the co-conspirator hearsay statements because he did not make a timely objection and he did not object on Confrontation Clause grounds. We reject both arguments. The Government relies upon *United States v. Moody*, 778 F.2d 1380 (9th Cir.1985), *amended on other grounds*, 791 F.2d 707 (9th Cir.1986), for its assertion that Arambula waived his right to challenge the admission of the co-conspirator statements. In *Moody*, we held that the challenged statement was admissible because it was in furtherance of a conspiracy. *Id.* at 1382–83. However, we deemed the Confrontation Clause objection waived because it was first raised in the reply brief and not at trial. *Id.* at 1383.

In this case, Arambula objected at trial to the statements on hearsay grounds and moved to strike the testimony. In making the objection, he argued that there was no evidence the statements were made in furtherance of a conspiracy. The district court overruled the objection and allowed the testimony conditioned upon the prosecution's establishing a conspiracy. *Id.* Because the requirements for admission of statements under Rule 801(d)(2)(E) satisfy the Confrontation Clause, *see infra*, there is no confrontation violation if the federal rule is satisfied. Thus, Arambula's hearsay objection preserved the issue for appeal.

█ The Supreme Court has ruled that the requirements for admitting co-conspirator hearsay statements pursuant to Fed. R.Evid. 801(d)(2)(E) and the requirements under the Confrontation Clause are identical. *Bourjaily v. United States*, 483 U.S. 171, 182–84, 107 ·S.Ct. 2775, 2782–83, 97 L.Ed.2d 144 (1987). We followed *Bourjaily*, holding that when the requirements of Rule 801(d)(2)(E) are satisfied, there is no independent violation of the Confrontation Clause. *Yarbrough*, 852 F.2d at 1536. Therefore, if the co-conspirator statements in this case were properly admitted pursuant to Rule 801(d)(2)(E), there is no Confrontation Clause violation. We conclude that the statements were properly admitted. Consequently, Arambula's right to confrontation was not violated.

In *Yarbrough*, we stated that mere conversations or narrative declarations are not made in furtherance of a conspiracy; rather, statements are in furtherance of a conspiracy if they "further the common objectives of the conspiracy or set in motion

transactions that are an integral part of the conspiracy." *Id.* at 1535. Statements which induce participation or prompt further action in the conspiracy are admissible. *Id.* Moreover, we have established the following standard for admissibility: "[s]tatements made by co-conspirators are admissible if there is sufficient evidence to support the inference that the statements were made in furtherance of the conspiracy while the conspiracy was in existence.... The trial court's finding that a statement was made in furtherance of a conspiracy is entitled to deference." *United States v. Miller,* 771 F.2d 1219, 1233 (9th Cir.1985).

 In the present case, the undercover officer testified that Aldana told him he would get the drugs from a source. The officer also stated that Aldana told him the owners of the drugs would follow him to the delivery site and would be present when the sale was made. These statements were properly admitted. There was sufficient evidence to support both an inference that a conspiracy existed and that the statements were made in furtherance of that conspiracy. Agent Roberts testified that all five defendants had been at Aldana's residence and that Arambula and Mariles had pulled a white package from the car. In addition, Rodriguez testified that all five men were at the delivery site (Denny's). Moreover, ·the co-conspirator statements were made "in furtherance of a conspiracy" because they fulfilled the objectives of the conspiracy. We find the district court did not clearly err either in its factual determination that a conspiracy existed or in its conclusion that the statements were made in furtherance of that conspiracy. Therefore, because the statements were properly admitted under Rule 801(d)(2)(E), Arambula's confrontation rights were not violated. *See Bourjaily,* 483 U.S. at 182–84, 107 S.Ct. at 2782–83.

Finally, Arambula argues that the cumulative effect of the errors was so prejudicial as to warrant reversal. However, because we conclude that the only error which occurred was harmless, we need not address this final contention.

## CONCLUSION

The district court properly admitted both the prior drug conviction under Rule 404(b) and the co-conspirator statement pursuant to Rule 801(d)(2)(E). Although the district court erred in admitting the prior firearm and undocumented alien arrests, it was harmless error. Finally, we conclude no *Bruton* error occurred.

AFFIRMED.